THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DOUGLAS McMILLER, Plaintiff in Error.

*Opinion filed November 27, 1951.*

LOUIS L. GOULD, and STEPHEN LEE, both of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, WILLIAM J. McGAH, JR., and PATRICK J. EGAN, all of Chicago, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

The plaintiff in error, Douglas McMiller, herein called the defendant, was on April 5, 1949, indicted in the criminal court of Cook County for the crime of murder. He waived trial by jury and the case was heard before the

court. He was found guilty and the sentence imposed was the minimum under the law for murder, fourteen years in the penitentiary. He has sued out a writ of error in this court to review the proceedings. He assigns as error the following: (1) The defendant was not proven guilty of the crime of murder beyond all reasonable doubt. (2) The defendant was prejudiced by the admission into evidence of the statement taken from him by the F.B.I. in New York on stipulation of counsel without the personal consent of the defendant. (3) The trial judge erred in going beyond the record to find the defendant guilty when, on his own initiative, he looked up a portion of the court reporter's record and investigated the reputation of the defendant.

The murder occurred in a tavern in the city of Chicago on January 28, 1939, and the indictment was returned on April 5, 1949. The facts as related by an eyewitness, Youngblood, show that on Saturday afternoon, January 28, 1939, the defendant entered the tavern, located at 205 East Forty-seventh Street in the city of Chicago, carrying a loaded shotgun; that when the defendant came in the door of the tavern he shouted, "Everybody lay down." One Garnett Hicks was in one of the booths and started to run toward the rear of the tavern, when the defendant shot him in the back. He fired several times and the shots scattered and hit several other customers, including the witness. Youngblood further testified that someone from the washroom called out, "Is that you, Porkchops," and the defendant replied, "Yes, I told you I was coming back, didn't I?;" that defendant then said, "Don't nobody follow me," and left the tavern. One of the other witnesses for the State also identified the defendant as the man who did the shooting. Four of the customers who had been shot were taken to a hospital. Garnett Hicks died before they reached the hospital. The defendant was definitely identified by the witness, Youngblood, as the man who did the shooting.

Shortly after the shooting the defendant left the city of Chicago and was not located for about ten years. He was found in the city of New York by officers of the F.B.I., who caused his arrest. He made a written statement to the F.B.I. in which he admitted the shooting but claimed that it was done in self-defense. His story was that a few days before he had been in the same tavern and Garnett Hicks had beaten him up; that when he entered the tavern on January 28, he thought Hicks was reaching for a gun and he thereupon shot in self-defense. Other witnesses testified as to the shooting but could not identify the defendant. When defendant was apprehended by the F.B.I. officers in the city of New York, he made a statement admitting that he had bought a shotgun and ammunition and went to the tavern with the loaded gun on Saturday; that he entered the bar and saw the decedent, Garnett Hicks, standing at the bar and fired five shots at him at a distance of twenty feet and saw him fall to the floor; that he then left the bar and went to a friend's house and left the gun there; that he left the city of Chicago on February 2, 1939, and did not return until he was arrested and brought back for trial.

The factual situation and a review of the evidence does not in any measure support the contention of the defendant that he shot in self-defense. Defendant complains about the admission of the statement he made to the F.B.I. officers in the city of New York. He admits, however, that it was made voluntarily. The statement was signed by the defendant, Douglas McMiller, and witnessed by two F.B.I. officers. One Charles H. McGuire, a police officer of the city of Chicago, was also present at the time the statement was taken. At that time he stated that he had two names, Robert Sneed and Douglas McMiller, and an alias, "Porkchops."

The evidence on the part of the defendant consisted of the testimony of three character witnesses as to his repu-

tation for being a peaceful, law-abiding citizen prior to the day of the shooting. Defendant also took the stand in his own behalf and admitted that he entered the tavern with a loaded shotgun; that he had formerly had trouble with Hicks and when Hicks went for his pocket, defendant thought he meant harm and, therefore, he shot the deceased at least three times in the back, immediately left the tavern and threw the gun away. He also admitted that he did not go home after he left the tavern; that he threw the gun away in an alley and, shortly after, left Chicago, spending time in several different States and finally locating in the city of New York.

The testimony without question proves that the defendant was guilty of the shooting and there is no merit to his contention that he was not proved guilty of murder beyond all reasonable doubt. The point urged by counsel for the defendant that he was prejudiced in his right to a fair trial by his counsel stipulating to a statement in writing, without proof on the part of the People and without the personal consent of the defendant, is without merit. Defendant was at all times represented by able and competent counsel of his own choosing, and we must presume that he thought defendant's interests would not be prejudiced by stipulating to what the People's witnesses would testify instead of having them testify upon the witness stand. *People* v. *Malin,* 372 Ill. 422.

In the case of *People* v. *Pierce,* 387 Ill. 608, this court said, "The law is well established in this State that an accused may, by stipulation, waive the necessity of proof of all or any part of the case which the State has alleged against him and that he cannot complain in this court of evidence which he has stipulated into the record."

The objection of the defendant that the court went outside of the record to find defendant guilty is based upon the following language taken from the decision of the court at the time of sentence: "At any rate, the finding is guilty

of murder beyond any doubt in my opinion. He has had a course in farming in Mississippi where he stayed for a while, he is experienced in the steel and iron business, in the factory, that place where they make the barrels of steel, I happen to know them, one of my star football players. He left there, I know the president out there, and the boy's reputation here was none too good. I always take the liberty of investigating, getting a little idea."

We cannot approve or condone such conduct by the trial judge in a criminal case. The remarks above stated indicate that he had made some outside private investigation concerning the defendant previous to pronouncing sentence. It is impossible to determine from the record the extent of such investigation or how much the judge was influenced by reason of his inquiry. The search for outside information by the trial judge was wholly improper.

The right of a person accused of crime to a fair and impartial trial, according to the recognized rules of law and procedure, is not a mere formality but is a substantial part of the law of the land. When he waives a trial by jury he is entitled to the same fair and impartial treatment he would expect and be entitled to by a jury. (*People* v. *Hoffman,* 379 Ill. 318.) The guilt or innocence of a defendant should be determined by the evidence produced in open court, and the consideration of outside matters, obtained through private investigation, is a violation of his constitutional rights. *People* v. *McGeoghegan,* 325 Ill. 337.

Because of the prejudicial error committed by the trial judge as evidenced by his remarks, the judgment of the criminal court of Cook County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*